Severino **BITANG** et al., Plaintiffs,

v.

**REGIONAL MANPOWER ADMINIS- TRATOR OF the UNITED STATES DEPARTMENT OF LABOR,** Defendant.

**No. 72 C 1099.**

United States District Court, N. D. Illinois, E. D.

Dec. 11, 1972.

Samuel D. Myers, Freedman, Freedman & Myers, Chicago, Ill., for plaintiffs.

J. H. Alesia, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION

TONE, District Judge.

Plaintiffs are aliens currently residing in the United States who sought immigrant visas for permanent residence under 8 U.S.C. § 1153(a)(3). That section provides for "third preference" to those "qualified immigrants who are members of the professions, or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States."

Plaintiffs Severino Bitang, Evelyn De Borja, Renato Guttierrez, Jose Macaisa and Guillermo Reyes claim professional status as accountants. Plaintiff Ester De Guzman claims that status as an auditor and plaintiff Horace Yao as an accountant-auditor.

The Immigration and Naturalization Service apparently does not question plaintiffs' standing as "members of the professions" within the terms of the above quoted section. There is, however, an additional requirement which must be met before persons in plaintiffs' positions can qualify for permanent visas. The Secretary of Labor must determine and certify that the alien's entry into the domestic labor market will not be preju-

dicial to the American worker. 8 U.S.C. § 1182(a)(14) provides:

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

.    .    .    .    .    .

(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed."

■ The Secretary of Labor has delegated responsibility for making the above determination and certification to the Manpower Administration, Department of Labor. With respect to plaintiffs in the present case, the defendant Regional Manpower Administrator determined that there were sufficient American workers available in the Chicago area to perform the plaintiffs occupations. Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 and review under the Administrative Procedure Act, 5 U.S.C. § 704 of that determination and denial of certification. This Court has jurisdiction. Song Jook Suh v. Rosenberg, 437 F.2d 1098 (9th Cir. 1971).

■ The matter is before the Court on cross motions for summary judgment. The issue to be determined is whether defendant abused his discretion. Golabek v. Regional Manpower Administration, 329 F.Supp. 892 (E.D.Pa.1971). The standard to be applied in making that determination is whether, based upon the facts in the administrative record, it can be said that the defendant's decision was "made without a rational explanation, inexplicably departed from established policies, or rested upon an impermissible basis such as an invidious discrimination against a particular race or group . . . ." Wan Ching Shek v. Esperdy, 304 F.Supp. 1086, 1087 (S.D. N.Y.1969). It is contended that defendant's decision was made without a rational explanation. Another test for abuse of discretion is whether, upon examining the administrative record, it can be said that there is no evidence to support the defendant's decision. Song Jook Suh v. Rosenberg, *supra*, 437 F.2d at 1102. Applying these tests to the administrative record in this case, I find that defendant has abused his discretion.

The sole basis found in the administrative record for defendant's determinations that there were in fact a sufficient number of American workers in the Chicago area "able, willing, qualified and available" to perform plaintiffs' professions were communications from the Illinois State Employment Service (ISES) to defendant that there were various numbers of people listed with that service who were seeking employment in the various occupations of plaintiffs.

The only evidence that several of these communications occurred consists of unsigned sheets of paper containing handwritten notes which apparently were found in the respective plaintiffs' files. The inference that is sought, of course, is that these were made by the certifying officer during telephone conversations with employees of the ISES.

■ Even putting aside my doubts as to the sufficiency and reliability of these notes as evidence in the record, I remain convinced that the record contains no basis for the defendant's apparent determination that there were

American job seekers in the Chicago area "able, willing, qualified and available" to perform the plaintiffs' professions. *See* Golabek v. Regional Manpower Administration, *supra,* 329 F.Supp. 892 (E.D.Pa.1971). The record at most establishes that on the dates in question there were a certain number of people who had in the past listed their names with ISES as seeking work and whose names had not been removed. There was no showing that the persons listed fell within the federal standards of "able" or "qualified" or even were still "available."

In support of their motion plaintiffs state that the ISES accepts applicants' statements of qualification without verification, does not verify whether they are presently employed, and makes no effort to strike from the list of applicants the names of those persons who have found employment unless those persons request such action. Although the Government does not dispute these contentions, I am hesitant to ascribe such a lack of organization to that agency. Nevertheless, the fact remains that the record does not show that any job seekers listed were "able," "qualified" or even still "available" on the date in question.

The result might be different if the numbers of persons listed with the employment service as allegedly seeking positions in plaintiffs' occupations were of such magnitudes as to make it reasonable to discount those who had falsely listed their qualifications or their lack of current employment or who had not yet had their names removed after they had in fact found employment. This sufficiently substantial quantity was present only in the case of Jose Macaisa. As to other plaintiffs the numbers of applicants listed by the service were so small, given the size of the accountant population in the Chicago area, as to amount to no evidence of a shortage when combined with the lack of any evidence that those listed were in fact "able," "qualified," and still "available."

(*I. e.*, De Borja—34, De Guzman—17, Reyes—21, Yao—20.)

With respect to plaintiffs Bitang and Guttierrez, it appears that the defendant merely adopted the conclusory statement of the ISES that these plaintiffs' professions were listed as surplus. I recognize that a certain amount of reliance upon state agency findings is necessary. Nevertheless, the statute conferring upon the Secretary of Labor the responsibility for making these determinations certainly requires more than blind and unquestioning acquiescence in a state agency's ultimate conclusions. There is again no showing in the record that in reaching this conclusion the ISES utilized the federal standard of "able, willing, qualified and available."

The situation is somewhat different as to plaintiff Jose Macaisa. There is adequate evidence of the communication of information by the ISES to the defendant in the form of a letter of transmittal. By its reference to the McCarran Act, that letter shows on its face that the state agency was giving information with the federal standard of "able, willing, qualified and available" in mind. Moreover, the number of applicants listed, 150, was sufficiently substantial to obviate any minor discrepancy between federal and state standards.

Yet even as to Macaisa, I am left with the impression that the defendant merely made his determination pro forma without considering even the evidence which he now proffers as forming the basis of his decision. This suspicion is engendered by the statement made by the ISES letter of transmittal to the effect that the wages paid plaintiff Macaisa were below the prevailing rate. Yet the certifying officer found that the wages involved were *not* less than the prevailing rate. It thus becomes apparent that the defendant has disregarded his own evidence. If the letter of transmittal from ISES was insufficiently trustworthy to be accepted for its statement that plaintiff Macaisa's wages were below the prevailing rate, lacking fur-

ther explanation in the record, it must also be deemed insufficient to provide a basis for the determination that there were large numbers of applicants for positions in plaintiff Macaisa's occupation.

For the aforementioned reasons, this action is remanded to defendant for the making of further determinations not inconsistent with this opinion with respect to the provisions of 8 U.S.C. § 1182(a) (14).