Roberto **DE JESUS RAMIREZ,**
**et al., Appellants,**

v.

**Robert B. REICH, Secretary**
**of Labor, Appellee.**

**Nos. 97–5276 to 97–5281.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 9, 1998.

Decided Oct. 6, 1998.

Michael E. McKenzie argued the cause and filed the briefs for appellants.

Lisa H. MacPhee, Special Assistant United States Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, United States Attorney, and R. Craig Lawrence, Assistant United States Attorney.

Before: SILBERMAN, HENDERSON, and RANDOLPH, Circuit Judges.

SILBERMAN, Circuit Judge:

Appellants are six aliens who challenged as arbitrary and capricious the Secretary of Labor's denial of labor certification applications filed by their employers.[1] The district court granted the Secretary's motion to dismiss on the ground that the aliens failed to exhaust their administrative remedies and, in the alternative, that their claims were moot. We affirm the district court's dismissal of appellants' claims, although on different grounds than those on which the district court relied.

## I.

The Immigration and Nationality Act includes among the classes of "excludable aliens" (*i.e.*, aliens ineligible to receive visas or be admitted to the United States) those aliens seeking entrance to the United States for the purpose of performing skilled or unskilled labor. 8 U.S.C. § 1182(a)(5)(A)(i)

---

1. A seventh plaintiff (Rodolfo Delsid Ramirez), whose case was consolidated with appellants' cases below, was listed as an appellant on the appellants' brief. However, as the government points out, this plaintiff did not file a notice of appeal and is therefore not an appellant before this court.

(1994). An alien avoids this classification only if the Secretary of Labor determines and certifies to the Secretary of State and the Attorney General that "there are not sufficient [American] workers who are able, willing, qualified, and available" and that "the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1182(a)(5)(A)(i)(I), (II).

The Department of Labor has promulgated a comprehensive set of regulations governing the issuance of labor certifications. *See* 20 C.F.R. pt. 656 (1998). The certification process begins when an employer, on behalf of an alien that the employer seeks to hire, files an application for labor certification with the local Employment Service office. See *id.* § 656.21(a). The regulations require the employer to describe the alien's qualifications and the employment position on the application, *see id.* § 656.21(a)(1),(2), make certain assurances related to the job offer, *see id.* § 656.20(c), and submit documentation regarding the employer's efforts to hire an American worker, *see id.* § 656.21(b). A "Certifying Officer" then reviews the employer's submissions and decides either to grant the labor certification or to issue a Notice of Findings based on whether the employer complied with the applicable regulations, and on whether the employer's submissions satisfy the Act's statutory requirements (no willing, able, qualified and available American workers, and no adverse affect of alien employment on American workers). *See id.* § 656.24(b)(1)-(3).

If the Certifying Officer issues a Notice of Findings, that notice must specify the basis for not granting the certification. *See id.* § 656.25(c)(2). The employer may then file a rebuttal to the Notice of Findings (the alien may also file a rebuttal, but only if the employer does). *See id.* § 656.25(d). If a rebuttal is not timely filed, the Notice of Findings becomes the Secretary of Labor's final decision denying the certification, the available administrative remedies are deemed to have been not exhausted, and any further appeals to the Board of Alien Labor Certification Appeals (Appeals Board) are forfeited. *See id.* § 656.25(c)(3). If a rebut-

tal is timely filed by the employer, the Certifying Officer reconsiders the application in light of any new evidence and makes a "Final Determination" based on the same statutory and regulatory standards used in the initial determination. *See id.* § 656.25(f). Assuming the final determination is a denial, the last stage of the process replicates the intermediate stage: the employer (and the alien, but not the alien alone) may request a review by the Appeals Board, *see id.* § 656.26(a); if no such review is requested, the Final Determination becomes the Secretary's final decision, *see id.* § 656.25(g)(2)(iv), and the administrative remedies are deemed to have been not exhausted, *see id.* § 656.26(b)(2). If at any point in the process the certification application is granted, the Certifying Officer sends the certification to the employer, who in turn submits the certification to the appropriate Immigration and Naturalization Service office. *See id.* § 656.28.

In each of the cases on appeal, the employer filed a labor certification application on behalf of an alien in compliance with the regulations. A Certifying Officer then issued a Notice of Findings to the employer, stating that the employer had not sufficiently documented that the landscaping job at issue was full-time work (the regulations define "employment" as "permanent full-time work by an employee for an employer other than oneself," *id.* § 656.3), and directing the employer to provide payroll records for the last three years for all workers employed as landscapers. The employer then filed a timely rebuttal to the Notice of Findings, contending that landscaping was in fact full-time work and submitting some documentation to that effect, but declined to provide the payroll records that the Certifying Officer had requested. The Certifying Officer then issued a Final Determination that, after the employer failed to request review by the Appeals Board, became the Secretary's final decision denying the labor certification application.

Each alien then filed suit in district court, without his respective employer, contending that the Secretary's decision was arbitrary and capricious. The Secretary filed motions to dismiss in each case, arguing that the

aliens failed to exhaust their administrative remedies and that their claims were moot. After consolidating the cases for purposes of the Secretary's motions to dismiss, the district court granted the motions in each case on the ground of failure to exhaust and, in the alternative, mootness.

## II.

■ We begin with the threshold question of prudential standing. Although the government did not explicitly challenge appellants' standing, appellants accuse the government of doing so implicitly. Be that as it may, we are obliged independently to examine the issue. *See Animal Legal Defense Fund, Inc. v. Espy*, 23 F.3d 496, 499 (D.C.Cir.1994). We specifically reserved this question in *Acupuncture Ctr. of Washington v. Dunlop*, 543 F.2d 852, 858 n. 66 (D.C.Cir. 1976), because the employer in that case had joined with the alien in the district court and on appeal. Two of our sister circuits, *see Stenographic Machines, Inc. v. Regional Administrator*, 577 F.2d 521, 527–28 (7th Cir. 1978); *Reddy, Inc. v. United States Dep't of Labor*, 492 F.2d 538, 544 (5th Cir.1974), and a number of district courts, *see, e.g., Gladysz v. Donovan*, 595 F.Supp. 50, 53 (N.D.Ill.1984); *Mukadam v. United States Dep't of Labor*, 458 F.Supp. 164, 167 (S.D.N.Y.1978), have concluded that aliens have standing to sue.

■ Although we have some doubts that Congress ever contemplated aliens suing to challenge a denial of a labor certification—even though aliens are obviously regulated by the statute, *see Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 396, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987)—neither the statute's text, structure, nor legislative history supplies the requisite "clear and convincing evidence" of a preclusive purpose. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *see also Shook v. District of Columbia Fin. Responsibility & Management Assistance Auth.*, 132 F.3d 775, 778–79 (D.C.Cir.1998). Unlike in *Block v. Community Nutrition Inst.*, 467 U.S. 340, 348, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984), for example, where the statute itself set forth a regulatory regime that omitted mention of certain parties, giving rise to an inference that those parties were precluded from litigating in court, *see Block*, 467 U.S. at 349, 104 S.Ct. 2450, there is no indication here that Congress itself considered the mechanism by which the Secretary of Labor would make labor certification decisions, or how (and at the request of whom) such decisions would be reviewable in the federal courts. And while the legislative history indicates that Congress intended to restrict further the admission of alien workers when it amended the statute in 1965, *see* S. REP. No. 748, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S.CODE CONG. & ADMIN. NEWS 3328, 3333, that does not speak to the question whether the class of aliens deserving of admission under the statute have standing to challenge in court the Secretary's decision to the contrary. The regulatory regime is completely a creation of the Labor Department's regulations, and under the Administrative Procedure Act, it is only statutes, not agency regulations, that can preclude otherwise available judicial review. *See* 5 U.S.C. § 701(a)(1); *Gladysz*, 595 F.Supp. at 53–54. In light of the presumption of judicial review, *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), we cannot conclude (despite our suspicions) that Congress intended to preclude the alien from challenging labor certification denials without the alien's employer. *See Block*, 467 U.S. at 351, 104 S.Ct. 2450 (holding that, where substantial doubt about congressional intent exists, the general presumption favoring judicial review is controlling).

\*　　\*　　\*

■ The district court held that appellants failed to exhaust their administrative remedies because their employers failed to participate in all stages of the required administrative review. Since the regulations provide that the employer's failure to appeal the Certifying Officer's Final Determination constitutes a failure to exhaust administrative remedies, the district court concluded that the aliens were foreclosed from pursuing their claims in court. Although the court expressed sympathy for the aliens, who argued

that they could not be required to exhaust administrative remedies that they had no independent right to pursue, the court feared that a contrary result would give employers an incentive to "short-cut" the administrative scheme by sending aliens directly to court to argue the merits of the labor certification applications.

■ It is quite true that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). But surely that requirement pertains only to administrative remedies actually available to a party. There is no support, in law or in logic, for the proposition that "A" can be held to have failed to exhaust remedies available only to "B." Although the regulations authorize the alien to appeal adverse certification decisions to the Appeals Board, that participation is conditioned on the employer's filing of a request for review. Therefore, where the employer makes no request for review, and the regulations provide the alien with no opportunity to appeal an adverse certification decision, we hold that the alien has not failed to exhaust.

■ The district court also relied on the employer's withdrawal from the administrative review process as the basis for its alternative conclusion that the aliens' claims were moot. The court reasoned that a labor certification application is in essence a job offer to an alien; once an employer withdraws from the administrative process, the Certifying Of-

ficer's decision becomes the Secretary's final decision, and the pending application/job offer consequently ceases to exist. We doubt that the district court can presume, as a matter of law, that the employer abandoned the application solely because the employer failed to appeal the Certifying Officer's Final Determination. In any event, the plaintiffs, besides seeking a certification and a *de novo* hearing before the district court, also requested any relief that the court deemed appropriate. Hence, even assuming that some doubt existed whether the underlying applications were still pending, the court, if it concluded that the Secretary's denial was arbitrary and capricious, could have awarded the plaintiffs relief by remanding to the agency. Of course, as we explain below, no such relief ultimately could be granted because the employer's withdrawal from the administrative process bars the alien's claim on the merits. That notwithstanding, the mere possibility of a remand is enough to show that the district court was incorrect to dismiss appellants' claims on the ground of mootness.[2]

### III.

■ Although we disagree with the district court's jurisdictional holding, we nevertheless affirm the district court's judgment on the merits using somewhat related reasoning. The district court's opinion was rooted in the court's entirely justified view that "the employer is an essential participant in the scheme for the granting of permanent labor certifications." We fully agree with this conclusion notwithstanding our disagreement with the district court over the appropriate doctrinal label through which to ex-

---

2. However, subsequent events have rendered moot the claim of one of the appellants, Gil Peralta. *See Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Natural Resources Defense Council v. United States Nuclear Regulatory Comm'n*, 680 F.2d 810, 813–14 (D.C.Cir.1982). Appellants inform us in their reply brief, and the government does not dispute in its supplemental memorandum filed with the court, that Mr. Peralta has been granted a labor certification pursuant to a subsequent application filed by his employer. He has been awarded all of the relief that he sought, and there is consequently no live controversy concerning the original denial of his application for the same

position with the same employer. As to the appellants whose employers have re-filed new certification applications that are currently pending, we do not think their claims are mooted. In contrast to Mr. Peralta, these parties have not yet received the relief originally sought and thus their original claim that the denial of their first certification application was arbitrary remains a live controversy. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (holding that a previously live case can become moot only if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation").

press it. The jurisdictional and merits issues in these cases are inextricably linked because the certification process, as a matter of administrative procedure and substantive law, depends upon the employer's participation. We read the Labor Department regulations to say that an alien's employer is an indispensable party at each and every stage of the administrative process, without whom the employer cannot obtain the labor certification that the alien seeks.

The applicable regulations presuppose the presence and active participation of the alien's employer, from the initiation of the process, *see* 20 C.F.R. § 656.21(a), to the required documentation relating to facts particular to the employer's employment and hiring practices, *see id.* § 656.21(b), to the fact that the employer's appeal of an adverse decision within the agency is a prerequisite to the alien's ability to appeal, *see id.* §§ 656.25(d), 656.26(a), to the ultimate issuance of the certification (if at all) to the employer, *see id.* § 656.28.[3] The regulations simply do not authorize the issuance of a labor certification without the employer's compliance with the applicable regulations and availability to receive the certification. Only if the regulations explicitly stated that "no labor certification shall be issued if an employer withdraws from the administrative process" could the regulations be any clearer as to the indispensability of the employer to the process. We think the structure of the administrative process succeeds by clear implication in bringing about the same end.

In these cases, the agency followed its regulations and treated the Certifying Officer's Final Determination as the Secretary's final decision once the employer failed to request review of that determination before the Appeals Board. *See* 20 C.F.R. § 656.25(g)(2)(iv). Appellants do not challenge the validity of these regulations on appeal, and so we have no occasion to examine whether the regulations' requirement that the employer be present at each stage of

the process is valid. *Compare Sieminski v. Donovan,* 589 F.Supp. 790, 793–94 (N.D.Ill. 1984) (rejecting due process challenge to the certification regulations). The employer's withdrawal from the administrative process is, under the applicable and presumptively valid regulations, sufficient to uphold the agency's refusal to grant certifications for these aliens. *See id.* at 792.

■ We conclude that the Secretary of Labor is always justified (assuming the regulations are valid) in denying an application for labor certification where the employer withdraws from the administrative review process and fails to request review of an adverse decision by the Certifying Officer.[4] In other words, no alien's claim challenging a labor certification denial in federal court can ever succeed on the merits if the employer has abandoned the administrative process before its completion. This conclusion is implicit both in the regulatory scheme in general, and in the Secretary's decision in these cases to allow the Certifying Officer's determination to become the agency's final decision simply because the employer failed to seek administrative review. We think our resolution of the case—that the regulations make the employer an indispensable party to the certification process—is the more appropriate means of expressing the conclusion underlying the district court's exhaustion and mootness analysis. At the end of the day, the result is the same: the aliens' claims must be dismissed. The decision of the district court is

*Affirmed.*

---

**3.** Actually, even after a certification is granted, the employer's participation is required. *See* 20 C.F.R. § 656.28; *Kooritzky v. Reich,* 17 F.3d 1509, 1511 (D.C.Cir.1994) (discussing regulations governing post-certification filings by the employer).

**4.** We do not decide whether a different result might obtain where an employer completes the entire administrative process, but leaves the alien to file suit in court alone.